| 62 | 564 |
| 62 | 578 |
| 63 | 646 |
| 63 | 678 |
| 64 | 360 |
| 64 | 366 |
| 64 | 371 |
| 62 | 564 |
| 66 | 53 |
| 66 | 55 |
| 62 | 564 |
| 106 | 476 |
| 106 | 534 |
| 62 | 564 |
| 111 | 511 |
| 62 | 564 |
| 150 | 672 |

TOLEDO, ANN ARBOR & NORTH MICHIGAN RAILWAY COMPANY v. DETROIT, LANSING & NORTHERN RAILROAD COMPANY ET AL.

(No. 1.)

*Railway company—Property of subject to condemnation for public use—On making due compensation—To an extent not essential to the enjoyment of its franchises—Provision of How. Stat. sec. 3350—As amended by Act 174, Laws of 1883—Making company whose road is crossed by another company liable for any of the expense of making such crossing—Is unconstitutional—Provision for keeping crossing in repair only justified by the necessities of the case—And should be limited to cost if crossing had not been made—Where manner of proposed crossing is unknown—Commissioners may assess damages on basis of a crossing on, above, or below grade—And should allow any additional expense or other injury occasioned by such crossing as a natural, necessary, or approximate result—Bona fide attempt to purchase rights sought to be condemned—Must precede condemnation proceedings—And must be alleged in petition—Which must describe fully such rights.*

1. The *property* of a railroad company may be taken for *public* use whenever the *necessities* of the *public* require it, to an extent not *absolutely* necessary to *successfully* carry out the object and purposes of the *franchises* granted to the company, and which are in their nature *public;* and the *land* occupied by the company as its *right of way* may be taken by the State under its power of *eminent domain*, to the *same extent* as that of a *private* citizen, for either the *use* of another railway company or for a *public highway*, subject to the constitutional provision for due compensation, to be fixed by condemnation proceedings where necessary. *Grand Rapids, N. & L. S. R. R. Co. v. G. R. & I. R. R. Co.*, 35 Mich. 273, and cases cited.

2. How. Stat. § 3350, as amended by Act 174, Laws of 1883, in so far as it provides for the payment by the railroad company whose road is crossed of any part of the *expense* of *making* such crossing, is unconstitutional.[1]

The further provision that *such* company shall bear a proportion of the expense of keeping the crossing in *repair* is *only* justified by the *necessities* of the case growing out of the connecting of the two tracks, and should be *limited*, as near as may be, to what would have

---

[1] See *Chicago & G. T. Ry. Co. v. Hough*, 61 Mich. 507.

been necessary to keep the track of the company whose line is thus crossed in repair *at* the crossing if the same had not been made; and this rule should be observed whether the crossing is made *on*, *above*, or *below* grade.

3. In fixing the *compensation* to be paid a railroad company whose track is crossed, the jury or commissioners, in case the *manner* of the proposed crossing is *unknown*, may assess the damages on the basis of *either* of the *three* modes which may be adopted in making such crossing; and any *additional* expense created in the ordinary use of such road, or any *other* injury or *damage* to the company's *track*, *right of way*, or *franchise*, occasioned by *such* crossing, and which may properly be considered as the *natural, necessary*, and *approximate* cause thereof, should be allowed the respondent.

4. A *bona fide* effort to *agree* for the *purchase* of any real estate, property, or franchise required by a railroad company for the purpose of its incorporation is a *condition precedent* to condemnation proceedings to acquire the same, and must be *alleged* in the petition filed for that purpose.

5. A railroad company has a *right* to secure a crossing for its road-bed and cars over the track and right of way of another, and to make the necessary connection for that purpose, and it may also secure the right to cross another railroad with side tracks, and the use of its right of way for the location of switches, *provided* such use is not *inconsistent* with the *enjoyment* by the *other* company of *its* franchise; but in condemnation proceedings to acquire *such* rights, the petition must describe fully the *rights* sought to be condemned, and a petition which seeks for the condemnation of the *title* to the *land* covered by the right of way is fatally defective.

Certiorari to probate court of Livingston county to review proceedings to condemn right of way. Argued April 20, 1886. Decided October 7, 1886.

Order of confirmation set aside, and proceedings dismissed. The facts are stated in the opinion.

*Charles B. Lothrop*, for respondent and plaintiff in *certiorari*:

How. Stat. § 3323, subd. 6, confers the right for one railroad to "cross, join, and unite" with another.

How. Stat. § 3331, as amended by Act 18, Laws of 1882, confines the power to take the track of a railroad to the purpose of crossing.

How. Stat. § 3350, as amended by Act 174, Laws of 1883,

provides the procedure by which to effect a crossing *after* the right is acquired.

Aside from the express limitation of How. Stat. § 3331, as amended, under the general statutes of eminent domain, the property of one corporation *actually* held for *public* use cannot be taken by another, but an *easement* may be acquired in *such* lands, which may be enjoyed concurrently with the public use to which it was before devoted: *In re Boston & Albany R. R. Co.*, 53 N. Y. 574; *In re Rochester Water Commissioners*, 66 Id. 418.

In proceedings of this character the petition must present such a state of facts as will show that the petitioner desires to condemn *such* property and for *such* purposes as are specified in the statute; and it must contain all the essential averments of *precedent* acts necessary to be done to entitle the petitioner to the relief sought. In the absence of such averments, the court acquires no jurisdiction: *Spofford v. Bucksport & B. R. R. Co.*, 66 Me. 44; *Smith v. C. & W. I. R. R. Co.*, 105 Ill. 511; *State of New Jersey v. Hudson Ry. Co.*, 46 N. J. Law, 289; Cooley, Const. Lim. 528.

The *fact* of inability to *agree* as to the price of the property or franchises desired is a *jurisdictional* averment: Mills, Eminent Domain, § 107, and cases cited; *Chicago & M. L. S. R. R. Co. v. Sanford*, 23 Mich. 427; *M. C. & L. M. R. R. Co. v. Clark*, Id. 525; *Laue v. City of Saginaw*, 53 Id. 442.

If a corporation presents a petition to condemn *more* land than is authorized, the proceedings will be set aside on *certiorari*: *State of New Jersey v. Hudson Ry. Co.*, 46 N. J. Law, 289.

In this class of cases it is just as essential for the petition to state at what grade and in what manner the crossing is to be made, as in ordinary cases to determine the exact description of land to be taken; and under the statute such a showing is necessary to give the court jurisdiction: *Vail v. Morris & Essex R. R. Co.*, 21 N. J. Law, 189; *L. S. & M. S. Ry. Co. v. C. & W. I. R. R. Co.*, 97 Ill. 519; *Chicago & M. L. S. R. R. Co. v. Sanford*, 23 Mich. 428–9.

It is generally held that a statute not providing for any notice is unconstitutional: *Kundinger v. City of Saginaw*, 59 Mich. 355.

The rule of damages seems to be the injury to the title or right of the railroad company whose track is crossed, taking into consideration any structure or changes rendered necessary in order to accommodate its own to the new condition:

*Mass. Cent. R. R. Co. v. Boston, etc., R. R. Co.,* 121 Mass. 126; *Chicago & A. R. R. Co. v. Springfield & N. W. Ry. Co.,* 67 Ill. 144; S. C. 96 Id. 274.

*L. S. Montague,* for petitioner and defendant in *certiorari*:

Among the general powers of railroads is the power "to cross, join, and unite with other railroads," etc.: How. Stat. § 3323, subd. 6.

If a railroad cannot agree for the purchase of any real estate or property required for its corporate purposes, it may acquire the same by special proceedings by condemnation: How. Stat. § 3331, as amended by Act 18, Laws of 1882.

The provisions of the statute, Act 198, § 36, Laws of 1873, —How. Stat. § 3350,—were practically held invalid, and it was held that condemnation and compensation must precede the crossing, in *Grand Rapids, N. & L. S. R. R. Co. v. Grand Rapids & I. R. R. Co.,* 35 Mich. 268.

The principal duty of the statutory board consists in the determination of the manner of crossing, and the power to estimate and apportion the expense is not given in the exercise of the power of eminent domain, but by way of police regulation: Cooley, Const. Lim. 580; *Fitchburg R. R. Co. v. Grand Junction R. R. & D. Co.,* 1 Allen, 552; S. C. 4 Id. 198.

Being a tribunal without common-law powers, a jury trial need not be given: Cooley, Const. Lim. 410 (note 2).

Even though it should be held that the section was unconstitutional in giving too great power to the railroad board, there will be no damage to respondent, except the value of the land or easement' taken. There would then remain for the railroad board nothing to do that would bear any resemblance to determining compensation for the taking of property: *Tuckahoe Canal Co. v. Tuckahoe R. R. Co.,* 36 Am. Dec. 384; S. C. 11 Leigh (Va.), 42.

The petitioner could take nothing but the right of way: 1 Redf. R. R. 247–8; 3 Suth. Dam. 445–7.

A surface description of the lands sufficient for conveyance would be definite enough in the petition: *Mich. Air Line Ry. v. Barnes,* 44 Mich. 225.

The petitioner alleges that it seeks to acquire a right of way for the purpose of constructing and operating its railroad... That is only an easement, the title not to pass to petitioner, but to remain in the owner of the land, not even in respondent: Washb. Ease. p. 15, § 13, p. 229, § 2; 1 Redf.

R. R. 247–254; *Barclay v. Howell's Lessee*, 6 Pet. 513; 3 Kent, Com. 432–3; *Troy & Boston R. R. Co. v. Potter*, 42 Vt. 265; *Kansas Cent. R. R. Co. v. Allen*, 22 Kan. 285.

SHERWOOD, J. This case is *certiorari* to the probate court of the county of Livingston to condemn lands for a right of way for the railroad of the petitioner,—the lands sought to be condemned being the respondent's right of way,—and enough thereof to allow the petitioner to cross the same with its right of way and track.

The respondent had the proper notice of the pendency of the petition, and at the time fixed for hearing appeared before the probate court; and the Detroit, Lansing & Northern R. R. Co., by its attorney, moved to quash and dismiss the proceedings for certain reasons then stated in writing and filed with the court. The motion was overruled.

The respondent company thereupon filed its answer to the petition, showing why it should not be granted, which was also overruled by the court; and commissioners under the statute were appointed, who met, and, after taking testimony in the case and inspecting the premises, found and reported to the court that it was necessary for the petitioner to take the said real estate for public use, viz., for the use of its railroad for a right of way and crossing, and fixed the damages and compensation to be made therefor, which report on motion was confirmed, against the objections of counsel for respondent written and filed in the case, on the eighteenth day of December, 1885.

The land described and condemned in the petition under the order of the court was a part of the respondent company's right of way, and at a place where the respondent's track was built upon an embankment fourteen feet above the general level of the ground.

The proceedings in the probate court are brought before us for review by writ of *certiorari*.

Two main grounds are relied upon by respondent's counsel to show that these proceedings cannot be sustained:

1. That the probate court acquired no jurisdiction under the petition.

2. That the commissioners erred in their measure of damages and compensation.

Section 3331, How. Stat., reads as follows:

" In case any railroad company is unable to agree for the purchase of any real estate, property, or franchises required for the purpose of its incorporation, it shall have the right to acquire the title to the same in the manner and by the special proceeding prescribed in this act; but there shall be no power, except for crossing, to take the track or rights of way of any other railroad company without the consent of said railroad company, except as is hereinafter provided."

Section 3323, How. Stat., it being § 9 in the original act, contains 9 subdivisions in describing the general powers and stating the liabilities and restrictions of railroad companies; and the sixth subdivision, in mentioning the powers, says the company is authorized—

" To cross, join, and unite its railroads with any other railroad now or hereafter constructed, under any law whatever, at any point on its route, and upon the grounds of such other railroad now or hereafter constructed, with the necessary turnouts, sidings, and switches, and other accommodations and conveniences in furtherance of the objects of its connections ; and to make all such business arrangements as said companies may agree upon.   And every company whose railroad shall be intersected by any other railroad shall unite with the owners of such other railroads in forming such intersections and connections, and grant facilities for the same, as hereinafter provided."

Section 36 of the General Railroad Law of 1873—being How. Stat. § 3350—provided, if any railroad desired to make a crossing of another, a written notice was to be given to the superintendent of the latter to that effect, and at the end of ten days thereafter the crossing could be made by the former, but without expense to the company whose road was crossed ; and after the crossing was made, the future expense of maintenance was to be borne equally by the companies; and if, after the crossing was made, the companies could not agree as to the compensation the company should make whose road had been constructed across the other, condem-

nation proceedings could be had to ascertain such compensation, which could not in any case exceed the value of the land.

This section of the statute fell under the condemnation of this Court in the case of *Grand Rapids, N. & L. S. R. R. Co. v. Grand Rapids & I. R. R. Co.*, 35 Mich. 265.

Mr. Justice MARSTON, in giving the opinion of the Court in that case, uses the following very forcible language in speaking of the character and property right of the company whose road was to be crossed:

" A repeat of the law under which the corporation was organized would not vest the title to its property in the public. In so far as the corporation is a common carrier, the Legislature has undoubted power to control and regulate it ; but in so far as its property is concerned, property taken by it for use in the building and operating its road, so long, at least, as such property is used by the corporation for such purposes, is as sacredly guarded and protected under our constitution, and is as much beyond the reach or power of the Legislature, as is the property of an individual.

" Whatever the right or title of the corporation may be in such lands, whether a mere easement or something greater, whether it may by some be considered public property and by others private, call it by what name we will, practically, in order for the company to fully enjoy its rights therein, the use must not only be permanent in its nature, at least so long as the road is operated, but it must be exclusive.

" From the very nature of the construction and operation of railroads, the public cannot use their road in the usual or ordinary manner of using a common public highway. Neither the State nor any of its departments, or municipalities, have or claim any interest in the property or franchises of the company. They neither pay nor contribute towards the purchase of the right of way, or to keeping it in proper repair afterwards. All this is done by the company itself and through its efforts, and the right thus acquired and paid for by the company is as much its property, and of value to it, as would be a like right or interest if owned by an individual.

" In justice, therefore, the corporation should have as clear a right to compensation for an injury sustained, in

consequence of an appropriation or use of its property by another without its consent, as an individual would."

If this is sound doctrine, and I recognize it as such, then the same legal proceedings must be had in this case as in the condemnation of private property for public purposes in other cases.

Impressed, undoubtedly, with this view of the case, the Legislature, in 1883 (Laws of 1883, Act 174, § 36), amended the section under which the decision I have just quoted was made, which section as amended, and under which the petitioner has sought to bring the proceedings in this case, reads as follows:

"Any railroad company desiring to make the crossing or connection mentioned in subdivision six of section nine of this article, after having acquired the right thereto by purchase or condemnation in the same manner as prescribed by the act for obtaining title to real estate or other property, shall give written notice to the superintendent or assistant superintendent of the company or companies whose road or roads it desires to cross or connect with, of the time when and the place where it desires to make such crossing or connection; and if said company cannot agree with such other company as to the manner of making such crossing, whether at grade or otherwise, the same shall be determined by a board consisting of the Attorney General, Secretary of State, and Commissioner of Railroads, who shall have power to and shall decide the manner of crossing, and the proportion of cost which each company shall pay for making and for maintaining the same; but the proportion of expense for maintaining the same may be reviewed at any time by said board on application of either company, and the proportion of expense again determined.

"*Provided*, That in determining the manner of crossing the board shall always provide that one road shall pass over the other where the same can be done without injustice to either company."

Has the petitioner done so? and, if it has, is the section of the law proceeded under, as it now stands, constitutional?

As we have shown, it is no longer in doubt in this State, if it ever was, that the property of a railroad company may be taken for public use whenever the necessities of the pub-

lic require it, to an extent not absolutely necessary to success-
fully carry out the object and purposes of the franchises
granted to the company, and which are in their nature pub-
lic; and the land occupied by the company as its right of
way may be taken by the State under its power of eminent
domain, subject to the single limitation mentioned, to the
same extent as the land of any private citizen, for either the
use of another railway company or for a public highway.
*Petition of Rochester Water Commissioners*, 66 N. Y. 418;
*Petition of Boston & Albany R. R. Co.*, 53 Id. 574.

The section of the amendment of 1883 we are now called
upon to consider is numbered, as in the old statute, 36. It
provides that after the company desiring to make the cross-
ing of another company's right of way has secured the right,
either by purchase or condemnation, it shall notify the other
company of the time and place when and where it desires to
make the connection and crossing, and if the two companies
cannot agree as to the manner of making the crossing,
whether at grade, or above or under the track crossed, then
the matter shall be left to the decision of a board consist-
ing of the Attorney General, Secretary of State, and Rail-
road Commissioner, and who shall also determine the cost
each company shall pay for making and maintaining the
same. The proportion, however, for maintaining may be
subsequently reviewed and modified by the board upon the
application of either company.

It will be noticed that the mode and manner of condem-
nation are the same as in other cases when resort to such
proceedings is to be had.

The necessity of *taking* and *using* the real estate, prop-
erty, and franchises required, and the damages or compensa-
tion which ought to be made, in a case of condemnation,
must be determined by three commissioners or a jury. This
may be done under the provisions of this section. Art. 18,
§ 2, Const.; Act 174, § 36, Laws of 1883.

The section requires the crossing road to be constructed
either over or under the other road where it "can be done
without injustice to either company," and whether it shall or

shall not be so constructed, and whether over or under, is to be left to the board created by the section.

I can see no objection to this provision; nor to the provision that after the crossing is constructed said board shall determine (if not agreed upon by the parties) in what proportion the expense for maintaining the roads at the point of crossing shall be borne by each company.

But I can find no authority for compelling the company whose road is crossed to pay any part of the expense of making or constructing the crossing. Certainly it is not for its interest to have its property thus used, and while the company, in accepting its franchise, must be regarded as having done so upon the condition that its road might be thus crossed upon being paid reasonable compensation therefor, there can be no presumption that it ever consented to pay for the privilege of being thus injured.

I know of no law or principle which will compel one company to build and maintain a railroad track for another, or to furnish the money necessary for that purpose; and to the extent that this section of the statute requires this to be done in this class of cases, it is repugnant to the constitution.

The provision of the section which requires that the company whose road is crossed shall bear some proportion of the expense of keeping the crossing in repair after it is made can only be justified by the necessities of the case growing out of the connection of the two tracks, for the reason that no repairs can be made at the point of crossing which will not extend to both tracks; and the extent of such expense, required to be borne by the company whose track is crossed, should always be limited, as near as may be, to what would have been necessary to keep the respondent's track in repair at the crossing had the same not been made.

This rule should be observed whether the crossing is made on, above, or below grade.

It is true that section 36 provides, in case of a disagreement between the parties interested as to the manner the crossing may be made, it shall be determined by the State officers after condemnation has been had. And it is said,

such being the fact, the commissioners or jury, in making condemnation and assessing the damages or compensation provided for, cannot take into consideration all the elements of damage for the want of knowledge in what manner the crossing will be made; whether such crossing is to be at grade, or under or above the respondent's track.

But under a proper petition, and with proper instructions by the court to the commissioners or the jury as to their duty in the premises, I apprehend no difficulty will be experienced upon this point.

If, at the time the damages or compensation are assessed, it is not known in what manner the proposed crossing is to be made, it may be submitted to the commissioners or to the jury to find what the damages or compensation should be in either of the three modes which may be adopted in making the crossing.

No such mode of procedure was, however, taken in this case, but, on the contrary, when evidence was offered by the respondent tending to show the different grounds of damage for which it sought compensation in consequence of the crossing, it was objected to by counsel for petitioner on the ground that all damages in the premises were to be determined by the board created by the section, and the jury took this view of the case, and only gave the value of the land condemned as the respondent's damages.

Any additional expense created in the ordinary use of respondent's road, or any other injury or damage to its track, right of way, or franchise, occasioned by the crossing, and which may properly be considered as the natural, necessary, and approximate cause thereof, should be allowed the respondent in cases of this kind.

The petition in this case is made by the Toledo, Ann Arbor & North Michigan Railway Company, by James M. Ashley, Jr., one of its directors, and after averring its corporate existence, which had been recognized by the proper State officers, and its intention to construct and complete its road from Toledo, Ohio, to St. Louis, Michigan ; that it had 101 miles constructed and in operation ; that it had made and

filed a survey of its proposed road through the county of Livingston, which it has designated on a map and filed with the survey, and that it has located its road according to such survey,—then states as follows:

"Your petitioner further shows that it seeks to acquire title by special proceedings under this petition to the following described real estate and property situated in said county of Livingston, to wit:

"A piece of land described as follows: Beginning at a point 2,277 feet south, 56° 4' east, from a point 671 feet north from the quarter-post on the east side of sec. No. 1, in T. 2 N., of R. 3 E., on the line between the township of Marion and the township of Genoa, in said county of Livingston; thence south, 56° 4' east, 66 feet; thence south, 33° 56' west, 100 feet; thence north, 56° 4' west, 66 feet; thence north, 33° 56' east, 100 feet, to the place of beginning, and being a strip of land 66 feet wide, a plat and map of which description is hereto attached and made a part of this petition.

"That the stakes standing and placed in said parcel or strip of land above described mark the center line of said route of said proposed railroad, and are in the center line of said above-described parcel or strip of land so proposed to be taken, and, for the purpose of further description of said proposed parcel of land, the said map and survey so filed in the office of the said register of deeds is made a part of this petition.

"That the said real estate, land, and property are required for the purpose of constructing, operating, and repairing said railroad and its appurtenances, and that the taking of said real estate, land, and property is necessary for public use; and that the said company has not been able to acquire title to said property, land, and real estate, for the reason that it has not been able to agree with the owner of said described parcel of land herein described, the Detroit, Lansing & Northern Railroad Company, as to the price thereof; that it refuses to grant and convey the same for the purposes herein set forth, except on such terms and conditions as your petitioner deems unjust and unreasonable, and greatly to the loss, detriment, and injury of your petitioner, and at an exorbitant price therefor, and at times refuses to grant and convey the same at all."

The remainder of the petition is unimportant, though in the usual form and properly verified.

Respondent's-counsel claims that the petition is insufficient; that it shows no effort to obtain, by agreement with respondent, the property before taking proceedings for condemnation ; that it seeks, by the petition, to obtain greater rights in the respondent's property and franchises than the law allows in condemnation proceedings ; that it does not properly describe the right it seeks to condemn.

I think the respondent's objections to the petition in this, case are well founded, and must prevail, within the decisions of our own Court. *Chicago & M. L. S. R. R. Co. v. Sanford*, 23 Mich. 427 ; *Mansfield, Coldwater & L. M. R. R. Co. v. Clark*, Id. 524; *Laue v. Saginaw City*, 53 Id. 443. See, also, Dill. Mun. Corp. § 605 (470).

It will be seen, in above quotations, the statute provides that, " in case any railroad company is unable to agree for the purchase of any real estate, property, or franchises required for the purpose of its incorporation," it may then resort to proceedings for condemnation. How. Stat. § 3331.

The effort to agree must be a *bona fide* one, showing an attempt to purchase, by treaty between the parties, the property and franchises described in the petition, and a failure so to do, before other proceedings can be taken. This is jurisdictional, and must appear on the face of the petition. It does not so appear. *Clay v. Pennoyer Creek Imp. Co.*, 34 Mich. 204; *Chicago & M. L. S. R. R. Co. v. Sanford*, 23 Id. 427; Mills, Em. Dom. § 107; Cooley, Const. Lim. 528 ; *State v. Hudson Term. Ry. Co.*, 46 N. J. L. 289 ; *Spofford v. Bucksport & B. R. R. Co.*, 66 Me. 44; *Smith v. Chicago & W. I. R. R. Co.*, 105 Ill. 511.

The petitioner asks to have condemned more than the statute authorizes.

It seeks for a condemnation of the *title* to the land in the right of way sought to be obtained for the purpose of making the crossing. At most the petitioner could only obtain the right to cross the respondent's road with its track and cars, and whatever was incident and necessary to the crossing. How. Stat. § 3323, subd. 6 ; Act 174, § 36, Laws of 1883 ; *Grand Rapids, N. & L. S. R. R. Co. v. Grand Rapids &*

*I. R. R. Co.*, 35 Mich. 265 ; *State v. Hudson Term. Ry. Co.*, 46 N. J. L. 289 ; *Stone v. Commercial Ry. Co.*, 4 Myl. & C. 122.

It fails to describe the rights and franchises it may condemn under the statute, or that petitioner wishes to condemn. It has a right to secure a crossing for its road-bed and cars, and make the necessary connection with the other company's track for this purpose ; and it may also secure the right to cross the respondent's road with side tracks, and obtain the use of its right of way for the location of switches, provided such use is not inconsistent with the use of the road under the respondent's franchise. These rights, however, are not described in the petition, nor are they asked to be condemned. The right to the title to sixty-six feet in length of the respondent's right of way is the property described in the petition, and nothing else. Such a description in the petition for the purpose of obtaining a right to cross another railroad is fatally defective. *Grand Rapids, N. & L. S. R. R. Co. v. Grand Rapids & I. R. R. Co.*, 35 Mich. 265 ; *Lake Shore & M. S. Ry. Co. v. Chicago & W. I. R. R. Co.*, 97 Ill. 506 ; *White River Turnpike Co. v. Vt. Cent. R. R. Co.*, 21 Vt. 590 ; *Eastern R. R. Co. v. Boston & M. R. R.*, 111 Mass. 128 ; *Vail v. Morris & Essex R. R. Co.*, 21 N. J. L. 189 ; *Ind. & V. R. R. v. Newsom*, 54 Ind. 121 ; *Chicago & M. L. S. R. R. Co. v. Sanford*, 23 Mich. 428.

I do not think the probate court ever obtained jurisdiction in the case.

The order of confirmation will be set aside, and the proceedings dismissed, with costs of both courts.

The other Justices concurred.